

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

BTK:LAB
F. #2022R00659

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 20, 2023

<u>By ECF</u>

The Honorable Steven Tiscione
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Christopher Moscinski
           <u>Criminal Docket No. 22-485 (SLT)</u>

        The government respectfully submits this letter in advance of the defendant Christopher Moscinski's sentencing, which is scheduled for June 27, 2023.  For the reasons set forth below, the government respectfully submits that a sentence of 6 months' imprisonment be imposed in light of the seriousness of the defendant's crime and the need to deter him from continuing to commit similar crimes.

    I.    <u>Background</u>

      A.  <u>Offense Conduct</u>

        The instant offense relates to the defendant's actions at Planned Parenthood in Hempstead, New York ("Planned Parenthood") on July 7, 2022.  <u>See</u> Presentence Investigation Report ("PSR") ¶¶ 6-10.  As the Court will recall from the bench trial, surveillance footage shows that the defendant went to Planned Parenthood and strategically placed locks on the front gates surrounding the building.  <u>Id.</u> ¶ 9.

        When Planned Parenthood employees arrived that morning to open the building for appointments, they were unable to get through the gates or access the main entrance to the building.  <u>Id.</u> ¶ 6.  The locks had to be sawed off with the assistance of the local fire department and others.  <u>Id.</u> ¶¶ 6-7.  While this was occurring, the defendant returned to the gates of Planned Parenthood wearing a long grey religious robe, and when the locks and chains were removed, to further prevent access to the building, he stood, then laid down on the ground in front of the gates, to block the entrance with his body.  <u>Id.</u>

        Police officers had to physically sit the defendant up and carry him away from the gates.  During the course of his arrest, the defendant stated to arresting officers, "At least I slowed them down some…I slowed them down a little bit today."  <u>Id.</u>

In the weeks that followed the incident, the defendant engaged in a public, recorded interview with EWTN Pro-Life Weekly in which he admitted that he placed "six locks and chains" on the gates of Hempstead Planned Parenthood.  Id. ¶ 10.  Later in the interview, when asked what his motivation was for placing the locks, he stated among other things, "the main motivation was to try to keep that Planned Parenthood closed for as long as possible…"  Id.  During the interview, the defendant also acknowledged that his conduct was unlawful, and that he avoided involving anyone else in order to not subject them to the possible penalties.  Id.

Following the incident, the Director of Security of the Hempstead Planned Parenthood, told Probation that the defendant was frequently seen outside of other Planned Parenthood locations and characterized the instant offense as the first time an incident of that type and caliber had occurred at the Hempstead Planned Parenthood.  Id. ¶ 13.  He described the event, as one that caused staff a great deal of anxiety in the weeks following the offense, as they were fearful of something "worse" happening in response to the offense.  Id.

B.  Defendant's Charges and Convictions

Following a bench trial on February 23, 2023, the defendant was found guilty of one count of violating the Freedom of Access to Clinic Entrances Act, 18 U.S.C § 248.  Id. ¶ 1.

C.  Defendant's Criminal History

The defendant has a long history of violating the law.  In addition to a number of convictions, he also has a number of arrests which did not result in formal convictions.  A full recitation of the defendant's criminal history is contained in the Presentence Investigation Report.  Notably, between 2017 and 2022, the defendant committed several offenses similar in nature to his count of conviction in this matter.  Those offenses are summarized herein.

In 2017, the defendant was charged with Trespass After Being Forbidden.  Id. ¶ 29.  The defendant along with at least five other individuals stood in the waiting room at the Women's Health Clinic and refused to leave.  Id.  One of the individuals that accompanied the defendant reportedly stated that the clinic was "murdering babies," and that the reason the group was in the clinic was to "stop them from doing that."  Id.  After being informed that they would be taken into custody if they did not leave, five of the individuals dropped to their knees, "reciting a religious passage."  Id.  The defendant had to be carried out of the location, since he refused to walk, and was subsequently sentenced on November 11, 2017, to a $500 fine.

In 2020, the defendant was charged with Unlawful Entry.  Id. ¶ 30.  Similar to the defendant's 2017 conduct, here, the defendant along with several other individuals, were found acting unlawfully at Capital Women's Services medical office.  Id.  The defendant accompanied by one other individual stood in the reception area of the office.  Id.  They were asked to leave several times by both officers and the receptionist and refused to comply.  Id.  Both individuals were taken into custody, and the defendant was sentenced on March 9, 2022, to 120 days of imprisonment, which was suspended, and 24 months of unsupervised probation.  Id.

In April 2021, the defendant was charged with Obstruction of Governmental Administration and Trespass for similar conduct.  Id. ¶ 31.  The underlying conduct involved the

2

defendant sitting alongside a woman who pretended to have an appointment at All Women's Care Center.  Id.  The defendant "removed roses and a religious robe" from a bag and kneeled on the floor while in the facility.  Id.  The defendant had to be removed in a wheelchair since he refused to walk or stand for his arrest.  Id.  The defendant was convicted after a jury trial on February 10, 2023; sentencing is currently scheduled for June 30, 2023.  Id.

In August 2021, the defendant was charged with Conspiracy to Commit Criminal Trespass and Criminal Trespass.  Id. ¶ 32.  Officers were dispatched to a Planned Parenthood in West Chester, Pennsylvania in response to a report of "disturbance."  Id.  The defendant had entered the building with two other individuals, none of which had an appointment.  Id.  He was holding a rose and pamphlet and was dressed in a priest's robe.  Id.  After continuous refusals to step outside, a security officer grabbed the defendant's left wrist before he "went limp" and fell out of his chair onto the floor.  Id.  The defendant refused to walk or stand and continued to state that "Planned Parenthood was killing babies."  Id.  The defendant was sentenced on October 25, 2022, to eight days to six months' imprisonment and one year and six months of probation.  Id.  While on probation for this offense, a warrant was issued in March 2023 following a violation of probation supervision.  Id.  Specifically, the defendant failed to report to the probation department after his sentence and did not advise parole of additional criminal conduct, including his conviction at trial in Nassau County, New York, the instant conviction, or the sentence imposed in an open case in Michigan.  Id.

In December 2021, the defendant was charged with Criminal Trespass.  Id. ¶ 33.  Similar to the above-referenced incidents, police officers discovered the defendant in the All Women's Health & Medical Services waiting room, where he refused to leave.  Id.  An interview with a staff member revealed that a woman approached the intercom, falsely claiming to have an appointment, and was then permitted to enter.  Id.  The defendant then entered behind her and was accompanied by four other individuals who were "singing, chanting, and attempting to speak to patients trying to enter the location."  Id.  The defendant was arrested after two hours of refusing to leave.  Id.  The defendant was sentenced on August 2, 2022, to 90 days of imprisonment, a $500 fine (which the defendant claimed he is unable to pay) and an order of protection.  Id.  A hearing for the fine is currently scheduled for July 21, 2023.  Id.

In April 2022, the defendant was charged with Trespassing and related crimes.  Id. ¶ 34.  Police found the defendant blocking the entrance to the Northland Family Planning Clinic.  Id.  The defendant was told he could not trespass or interfere with the entrance.  Id.  Like in many other instances, the defendant had been asked to leave multiple times and refused.  Id.  He was forcibly transported away from the facility in a wheelchair.  Id.  The defendant was sentenced on March 30, 2023, to 90 days of imprisonment and a $325 fine.  Id.

II.     Applicable Law

The Supreme Court has explained that the Court "should begin all sentencing proceedings by correctly calculating the applicable [Guidelines] range.  As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).  Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, [it] may not presume that the Guidelines range is

3

reasonable.  [It] must make an individualized assessment based on the facts presented."  Id. at 50 (citation and footnote omitted).  Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct; [and]
>> (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation.  See 18 U.S.C. § 3553(a)(2)(D).  Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence.  The district court must also "remain cognizant of them throughout the sentencing process."  Gall, 552 U.S. at 50 n.6.

III.    Guidelines Calculation

Because the offense of conviction is a Class B misdemeanor, the United States Sentencing Guidelines do not apply, and the Court should look to the statute of conviction.  See PSR Addendum.  The maximum term of imprisonment under 18 U.S.C. § 248 for the defendant's conduct is six months.  Id. ¶ 69.

IV.    A Sentence of Six Months of Incarceration is Appropriate

The government respectfully requests that the Court impose the maximum term of six month's imprisonment under 18 U.S.C. § 248.  In determining a sentence, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a).  As relevant here, those factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; deterrence; and protection of the public from further crimes of the defendant.  Id. § 3553(a).  Each of these factors weighs in favor of a sentence of six months' imprisonment in light of the nature of the offense and the history and characteristics of the defendant as clearly demonstrated by his criminal history.  Moreover, this is a case where specific deterrence is of great concern.

The defendant is a serial recidivist who has demonstrated a commitment over decades to disturbing the lawful operations of women's health care clinics.  Id. ¶¶ 27-48.  The facts associated with his convictions show a pattern of disregard for authority and the defendant's inability to be a law abiding citizen, including attempting to obstruct his arrest ritualistically by failing to comply with orders from law enforcement and going limp, necessitating the need for him to be removed by wheelchair.  Id.  His actions for the instant offense were in line with his previous pattern of criminal behavior and demonstrate a commitment to criminal conduct.  Notably, here,

the defendant publicly took responsibility for and promoted his actions on a news program, underscoring his undisputed unlawful intent.  Id. ¶ 10.

The defendant's actions and behavior in this instant offense also clearly demonstrate an escalation from his previous crimes.  Here, instead of just disrupting operations at an open clinic, he took deliberate measures to ensure employees could not access the clinic in Hempstead to open it on July 7, 2022.  Id. ¶ 6.  In his own words, in sum and substance, the defendant wanted to slow Planned Parenthood down that day.  Id. ¶ 7.

The defendant's actions were not without consequence.  In the words of the Planned Parenthood Director of Security, the defendant's actions caused the staff at the Hempstead Planned Parenthood a great deal of anxiety in the weeks following the offense, as they were fearful of something "worse" happening in response to the offense.  Id. ¶ 13.  In response, Planned Parenthood considered implementing additional security measures and access restrictions.  Id.

A sentence of six month's incarceration would advance the goals of specific and general deterrence.  The defendant's criminal history shows that he is incorrigible and that minor punitive measures and contact with law enforcement have not deterred him from variations of the same behavior.  Anything less than six months will send a dangerous message that obstructing access to women's health care clinics will result in scant punishment, which has already proven ineffective in preventing the defendant and others from engaging in this behavior.

V.    Conclusion

For the foregoing reasons, the government respectfully submits that a sentence of 6 months' imprisonment would achieve the goals of sentencing in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By: *Lauren Bowman*

Lauren A. Bowman
Assistant U.S. Attorney
(718) 254-6047